# FRANK WECKWERTH v. WILLIAM PROUDFOOT AND OTHERS.[1]

May 20, 1927.

No. 25,897.

**Judgment for defendants non obstante denied.**
    1. The contributory negligence of plaintiff was for the jury, and defendants are not entitled to judgment non obstante.

**Rulings at trial sustained.**
    2. There were no prejudicial errors in the rulings during the trial.

**Verdict for $9,800 not excessive in this case.**
    3. Verdict cannot be held so excessive that this court must conclude that passion and prejudice actuated the jury.

**Charge to jury.**
    4. There was no error in the charge or any omission to give requested instruction.

**Argument of plaintiff's counsel did not require new trial.**
    5. While the closing argument of plaintiff's counsel transgresses good taste, there is no such misconduct, presented by the record made, that this court may say that the trial court abused judicial discretion in denying a new trial upon that ground.

Damages, 17 C. J. p. 1057 n. 56; p. 1091 n. 85.
Evidence, 22 C. J. p. 738 n. 78, 79.
Highways, 29 C. J. p. 666 n. 91; p. 668 n. 13, 18.
New Trial, 29 Cyc. p. 775 n. 24; p. 1008 n. 48; p. 1009 n. 54.
Trial, 38 Cyc. p. 1784 n. 85, 86; p. 1785 n. 90; p. 1786 n. 91.

---

See note in L. R. A. 1915F, 30; 8 R. C. L. 674; 2 R. C. L. Supp. 638;
    4 R. C. L. Supp. 567; 5 R. C. L. Supp. 480; 6 R. C. L. Supp. 521.
See 2 R. C. L. 435; 1 R. C. L. Supp. 535.

Action in the district court for Waseca county to recover for personal injuries. The case was tried before Senn, J., and a jury,

[1]Reported in 214 N. W. 52.

which returned a verdict in favor of plaintiff. Defendants appealed from an order denying their alternative motion for judgment or a new trial. Affirmed.

*C. J. Laurisch, Moonan & Moonan,* and *L. K. Eaton,* for appellants.

*Claude H. MacKenzie* and *Gallagher, Madden & Gallagher,* for respondent.

HOLT, J.

Defendants appeal from the order denying judgment non obstante or a new trial.

On the evening of September 28, 1925, Rietforts Brothers, the owners of a threshing outfit, were moving it on highway No. 13, going south toward Waseca. When within about a mile of the city it was necessary to take water, and the team drawing the water tank was directed to move up to the east side of the steam tractor.

The highway is well graveled. The width of the graveled part was 27 feet, and then a grassy shoulder on each side of from one to two feet to the ditch slope. The drivers, or hind wheels, of the tractor had a tread of nearly ten feet, while the front wheels had less than seven. To the tractor was hitched a straw fuel-carrier about 14 feet long, then the separator, 11 feet wide, and then a bunkhouse. The tractor and separator were heavy, each weighing over five tons and, the road not being hard near the edges, the outfit traveled and stopped so that the left or east driver of the tractor was about upon the center line of the highway, thus leaving a space on the west side of the outfit of from two to five feet of the graveled part, and on the east, when the water tank (an ordinary wagon of four feet seven inch tread) was pulled alongside the tractor, a clear space of about seven feet of graveled road and then the grassy shoulder. The testimony of plaintiff tended to show that the heads of the team were a foot or two ahead of the front of the tractor, and that the team was turned in towards the west or the center of the highway. Upon the tractor, and on the easterly side thereof, was a presto-lite lamp lit. It was about five feet from the ground.

As they had started taking water two automobiles were seen coming up over the hill from the city towards the threshing rig. The rear one of these, a Chevrolet coupé, driven by defendant Proudfoot, in the employ of the defendants Priebe, when within 500 feet of the threshers, passed the other car and, according to the testimony adduced by plaintiff, continued on the westerly side of the road. At that time one of the Rietforts directed plaintiff, the bundle pitcher of the threshing crew who was standing at the horses' heads, to flag down the automobiles. He took off his hat, waving it as he walked forward from 15 to 25 feet, then turned around and while in the act of stepping back the Chevrolet car struck and sent him hurtling through the air over the water tank, landing him on the wire fence on the east side of the road and about opposite the separator, a distance of about 60 to 75 feet from where he was struck. The nigh horse of the team was hit and turned on his back alongside the water tank with his head toward the north, and the other was found straddling him. The tongue of the water tank pierced the door of the car, and a foot or so thereof snapped square off. Plaintiff was semi-conscious. His doctor testified to 24 bone fractures in his body, besides cuts and severe bruises. His left eye was out of the socket, and was pushed back in by Rietforts before the doctor arrived. Some of his ribs were fractured in two places. That a man passing through such an experience lives seems miraculous.

Proudfoot admits that he was driving at the rate of from 30 to 35 miles an hour until within 75 feet of the tractor, when he says he noticed the horses, but did not dare to use all the brake power for fear of turning turtle. He claims he was upon the easterly side of the road. This is sharply disputed by plaintiff's witnesses, who seem to be corroborated by the fact that, if the team was turned to the southwest, as they testify, the tongue of the wagon was in position to pierce the coupé as it did. While otherwise, plaintiff was neither in position to be hit, nor thrown in the direction where found, nor could the coupé well have been pierced by the wagon pole. The physical fact of a 200-pound body being sent through space in the direction and the distance plaintiff was can only be

explained by the assumption that Proudfoot was traveling at a terrific speed, and was angling in the way plaintiff's witnesses claim when he struck plaintiff.

Clearly Proudfoot's negligence was for the jury. We think it is also plain that the court cannot hold as a matter of law that plaintiff's contributory negligence was established. He had no authority in respect to the threshing rig's position upon the road. He was a mere servant of Rietforts Brothers, and in attempting to flag down or warn Proudfoot obeyed the direct command of his master. The only possible contention defendants can make would be that compliance with the command so obviously exposed plaintiff to imminent danger that a reasonably prudent servant would not have obeyed. But how can that be held as a matter of law, when it is considered that there was a good light on the tractor, that plaintiff was within its rays so that one coming as did Proudfoot would be likely to see him, that he could not know that Proudfoot was driving at the extremely high speed he was, and that he could assume that Proudfoot had his car under such control that he could stop within the space that his lights disclosed plaintiff's presence? Thomas v. Stevenson, 146 Minn. 272, 178 N. W. 1021. In determining whether the evidence reveals contributory negligence of a plaintiff as a matter of law, the court should not confine itself to some particular statement of such plaintiff; the whole of the evidence, including the physical facts, must be considered. So also must be the ability of a plaintiff to accurately express his meaning and describe events. In this case the deficiency of plaintiff in this respect is palpable. For instance, the record is clear that when he was told to flag down Proudfoot the latter was only about 500 or 600 feet away, and yet plaintiff estimated that it took him ten minutes to do what he did in the way of flagging before he was struck. Of course, it did not take that many seconds, at the rate Proudfoot was going.

Appellants cite railroad crossing cases and Provinsal v. Peterson, 141 Minn. 122, 169 N. W. 481. The former are not applicable. Trains must follow the rails. They have the right of way at all highway crossings. But on the public highways the automobile

must recognize that the pedestrian has the same right as he to travel thereon in safety day and night, and the driver of a car should so drive and have the car so lit in the nighttime that he is able to avoid running over a pedestrian after coming within vision. The Provinsal case was one where a pedestrian in broad daylight walked into the side of a car at a busy street crossing.

As to the rulings at the trial upon which errors are assigned, little need be said. Foundation was laid for the testimony that after the accident cars passed and repassed on the east side of the road when the water tank was in the position it was when the collision took place. True, the team was not there, but the jury had the evidence as to the position of the team. The medical experts' reading of the X-ray picture of the skull was conflicting, and it was for the jury to determine which was correct, and whether the nervousness and headaches of which plaintiff complains resulted from a fracture on top of the skull, as his doctor opined.

That the verdict of $9,800 is not so excessive that we can disturb it on the ground that passion and prejudice moved the jury is quite apparent from the mere description of what happened to plaintiff and the injuries he received. The experts of defendants concede that plaintiff is not now in condition to work and that it might take a year to fully recover. His own doctor claims that his injuries have permanently reduced his capacity for hard labor to one-fourth of normalcy. Plaintiff is 50 years old, of practically no schooling and of limited mentality, and hard labor is his only recourse for a living.

Isolated short phrases or sentences in the court's charge upon which error are assigned may be subject to criticism, but when these are read in the connection in which they are found the criticism falls. As a whole, the charge presents the law applicable to the issues accurately and clearly. If in some places when speaking of contributory negligence the court used general terms only, defendants' request on the subject was incorporated in the charge wherein the jury were told that negligence of plaintiff contributing in the slightest degree to the accident would prevent a recovery. Counsel is in error in asserting that the court did not cover the request that each party to the accident had a right to presume that the other

was using ordinary care. We do not think Rietforts Brothers' violation of law or negligence, if such it be, in hauling and stopping this threshing outfit while taking water, can in any manner be charged to plaintiff.

The alleged misconduct of counsel for plaintiff in his final argument to the jury presents the most serious assignment of error. The argument is incorporated in full in the settled case. No part of that in behalf of defendants, and which plaintiff's counsel had to meet, is before us. The trial court heard both, and knew to what extent there was an excuse or provocation for the portions upon which misconduct is predicated. That some statements were improper must be conceded. There was an invidious reference to the dress of a witness for defendants. While matters of that sort show bad taste and poor judgment of an attorney, we are satisfied that if any prejudice results therefrom the jury will not direct it against the other party to the suit. The record shows that, as the argument proceeded, counsel for defendants frequently interrupted with objections, some of which were sustained, others not. These interruptions became so frequent and insistent that the court suggested the objections be made and exceptions taken at the close of the argument. The attorney did so, and according to the record the part of the argument claimed to be objectionable embraces only one page of the record, beginning with the words "I am not going to waste time," in folio 1646 on page 549, to the end of folio 1648 on the next page. It is submitted that there is nothing peculiarly wrong or improper to be found in the argument contained in the part excepted to, and certainly the jury did not follow counsel in his suggestion as to the amount of the verdict.

The awarding of new trials for misconduct of counsel of the prevailing party is largely left to the discretion of the trial court, who knows the situation more fully than we do who have not before us the argument preceding which may have provoked or invited the remarks here challenged. The costs of an appeal should not be laid upon a litigant on account of the misconduct of his attorney, unless it clearly appears that the trial court abused judicial discretion in

denying a new trial on that ground. The cases dealing with that subject are quite fully cited in Parris v. McKay, 165 Minn. 241, 206 N. W. 393; also in Storhaugen v. Motor Truck S. Co. supra, page 47, and Brown v. Burrow, supra, page 219. We are of the opinion that it does not clearly appear that the trial court abused its discretion in denying a new trial for misconduct of plaintiff's counsel.

The order is affirmed.